UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL GREEN,

        Plaintiff,

v.

        Case No. 25-cv-923-pp

HEARTH INITIATIVE CORPORATION, *et al.*,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION TO EXPEDITE PROCEEDINGS (DKT. NO. 3), SCREENING COMPLAINT AND REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

On June 30, 2025, the plaintiff—who is representing himself—filed a complaint, dkt. no. 1, a request to proceed without prepaying the filing fee, dkt. no. 2, and a motion to expedite the proceedings, dkt. no. 3. The complaint alleges that the defendants violated the plaintiff's civil rights and the Fair Housing Act by evicting him from an assisted living facility in Milwaukee, Wisconsin. Dkt. No. 1. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require the plaintiff to file an amended complaint.

**I.    Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff

1

must fully disclose his financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff's affidavit states that he is unmarried with no dependents. Dkt. No. 2 at 1. He avers that he is unemployed with no monthly income. Id. at 1–2. He avers that he has $0.34 in in cash or bank accounts. Id. at 3. The plaintiff's only identified monthly expense is a $15 gym membership. Id. at 2. He avers that he has no car or other property of value. Id. at 3–4. And he avers that he is "[p]oor, homeless due to this case." Id. at 4.

The court finds that the plaintiff does not have the ability to prepay the filing fee and will grant his motion for leave to proceed without doing so. The court advises the plaintiff, however, that he still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 Fed. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. §1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). The plaintiff must pay the filing fee over time, as he is able.

## II. Screening the Complaint

### A. <u>Legal Standard</u>

The court must "screen" the complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Id.</u>

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2). The complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. <u>Id.</u> at 663–64.

B.  The Complaint

The plaintiff alleges that the defendants "operated or enabled an unlicensed housing program falsely advertised as therapeutic or transitional, which subjected tenants—including Plaintiff—to a racially biased, coercive, and carceral living environment in violation of federal and state law." Dkt. No. 1 at ¶2. He alleges that the housing facility at 3291 N. 11th Street "was never licensed, clinically staffed, or legally authorized to house vulnerable populations." Id. at ¶3.

The plaintiff alleges that defendant Hearth Initiative Corporation "claims to operate as a nonprofit entity" but "is not licensed as a provider of behavioral or transitional housing services." Id. at ¶7. He asserts that defendant Starr Haven Assisted Living is "affiliated" with the property and that defendants Kenneth Clay and Takyha Clay exercise "managerial and supervisory control over the program." Id. at ¶¶8–9. He alleges that defendant UMOS, Inc. referred individuals to the facility, as did the defendant John Doe probation officers. Id. at ¶¶10, 13. He contends that defendants Milwaukee County and the City of Milwaukee have regulatory and supervisory authority over facilities like this. Id. at ¶¶11–12.

The plaintiff alleges that in early 2025, he began living at the facility on 3291 N. 11th Street as a rent-paying resident, believing that the facility "was part of a licensed behavioral health or community reentry program." Id. at ¶14. He asserts that he and other residents—particularly residents who were "Black and/or LGBTQ+"—were "subjected to a highly carceral environment including

4

violence, surveillance, psychological coercion, and threats of expulsion for questioning authority or seeking documentation." Id. at ¶16. The plaintiff alleges that probation officers referred residents to the property, which he argues suggests "informal public-private coordination." Id. at ¶17. He says that he saw UMOS representatives at the facility during his tenancy, which he argues "further legitimiz[ed] the operation in the eyes of residents." Id. at ¶18.

The plaintiff alleges that after he started requesting rent receipts "and questioning the facility's legal authority," the defendants began "escalating surveillance, threats of violence, restricting communication, and ultimately pressuring the Plaintiff by threats of physical violence and weaponization of law enforcement to vacate the premises." Id. at ¶19. He says that he was evicted from the facility but was not served with an eviction notice or court proceedings. Id. at ¶20. The plaintiff asserts that the eviction was "extrajudicial and retaliatory, forced through intimidation and abuse of perceived authority." Id. He alleges that he became homeless despite prepaying rent through July 8th. Id.

The plaintiff alleges that after his eviction, he contacted the Milwaukee County Executive's Office and learned that Hearth Initiative "had attempted to arrange a formal tour, confirming County awareness of the entity and its activities." Id. at ¶21. He alleges that he saw a flyer naming Hearth Initiative as a participant in a Milwaukee County sponsored outreach event, even though "no contract, license, or clinical audit had ever been executed between the County and Hearth Initiative." Id. at ¶¶22–23. He alleges that this "pattern of

5

public misrepresentation, discriminatory housing practices, and governmental negligence . . . contributed to Plaintiff's harm." Id. at ¶24.

The complaint brings six claims. Id. at 7. Count I alleges that the defendants deprived the plaintiff of property and housing rights without due process in violation of 42 U.S.C. §1983. Id. Count II alleges that the defendants conspired to retaliate against the plaintiff "for asserting protected housing rights and to suppress complaints of discrimination and misrepresentation, motivated by racial and identity-based animus" in violation of 42 U.S.C. §1985. Id. Count III alleges that the defendants discriminated and retaliated against the plaintiff based on his race and perceived identity in violation of the Fair Housing Act, 42 U.S.C. §§3604, 3617. Id. Count IV is a "State Law Fraud and Misrepresentation" claim alleging that the defendants "intentionally misrepresented the licensure, scope, and safety of the facility in order to secure tenancy and public credibility, inducing Plaintiff to rely to his detriment." Id. Count V alleges that the defendants evicted the plaintiff without lawful process in violation of Wis. Stat. §704.45. Id. Count VI alleges that UMOS and Milwaukee County had a duty "to supervise their partners and investigate facilities receiving referrals or claiming public affiliation" and "[t]heir failure to exercise ordinary care enabled Plaintiff's injury." Id.

The plaintiff seeks compensatory and punitive damages, a declaration that his removal was unlawful and retaliatory, an injunction preventing the defendants from operating or supporting similar unlicensed programs and an

6

Case 2:25-cv-00923-PP    Filed 10/22/25    Page 6 of 20    Document 7

order starting an independent investigation into Hearth Initiative and its partnerships and attorneys' fees and costs. Id.

C. Analysis

Defendant UMOS, Inc. has appeared and answered the complaint. Dkt. No. 5. This was premature; a defendant should not respond to a self-represented person's complaint until the court has screened it and ordered service. Robinson v. Warner, Case No. 23-cv-1622, 2024 WL 1285290, at *3 (E.D. Wis. Mar. 26, 2024) (explaining that a defendant need not respond to the complaint until after screening and proper service of the summons and complaint).

In the past year, the plaintiff filed seven other civil cases in the Eastern and Western Districts of Wisconsin alleging various civil rights violations. See Green v. Aldi Inc., Case No. 25-cv-840 (E.D. Wis.); Green v. State of Wisconsin et al., Case No. 24-cv-874 (W.D. Wis.); Green v. Dane County, *et al.*, Case No. 24-cv-875 (W.D. Wis.); Green v. Porchlight Inc., *et al.*, Case No. 25-cv-194 (W.D. Wis.); Green v. Argent Cos., Case No. 25-cv-195 (W.D. Wis.); Green v. UnityPoint Health, Case No. 25-cv-216 (W.D. Wis.); Green v. Fitness Ventures, LLC, Case No. 25-cv-239 (W.D. Wis.). Two of those cases have been dismissed for lack of subject-matter jurisdiction and failure to prosecute, while the others remain pending. See Wisconsin, Case No. 24-cv-874, Dkt. No. 12 (dismissing case for failure to prosecute after plaintiff did not timely file an amended complaint); Aldi, Case No. 25-cv-840, Dkt. No. 5 (dismissing case for lack of subject-matter jurisdiction).

1. *Defendants Starr Haven Assisted Living, Kenneth Clay, Takyha Clay and the City of Milwaukee*

The complaint contains no factual allegations regarding Starr Haven Assisted Living, Kenneth Clay, Takyha Clay or the City of Milwaukee. The plaintiff refers to "defendants" collectively several times, but does not identify which defendant engaged in the allegedly unlawful behavior. The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The complaint must include enough facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 55 U.S. at 556). And "defendants are entitled to fair notice of each claim against them." Schmees v. HC1.COM, Inc., 77 F.4th 483, 488 (7th Cir. 2023) (citations omitted). Because the complaint contains no specific factual allegations against Starr Haven Assisted Living, Kenneth Clay, Takyha Clay or the City of Milwaukee, the court cannot reasonably infer that they are liable for the alleged civil rights violations and those defendants do not have fair notice of the claims against them. The court will dismiss defendants Starr Haven Assisted Living, Kenneth Clay, Takyha Clay and the City of Milwaukee as defendants.

2. *Section 1983 Claim*

That leaves Hearth Initiative Corporation, UMOS, Milwaukee County and the John Doe probation officers—the only defendants against whom the

complaint makes specific factual allegations. The court will begin with the plaintiff's §1983 claim.

Section 1983 of Title 42 is the federal statute through which a plaintiff may bring a claim that a state actor—an employee of a state, county or local government—violated his constitutional rights. To prevail on a §1983 claim, the plaintiff must prove that (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted).

Hearth Initiative and UMOS appear to be private corporations, so a question arises as to whether these defendants acted under color of law. "The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "For a private actor to act under color of state law he must have 'had a meeting of the minds and thus reached an understanding' with a state actor to deny plaintiffs a constitutional right." Wilson v. Warrant County Ill., 830 F.3d 464, 468 (7th Cir. 2016) (quoting Cunningham v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106, 107 (7th Cir. 1991)).

The plaintiff alleges that Hearth Initiative is a nonprofit that does not hold a license to operate behavioral or transitional housing services, but that it

9

holds itself out as having such a license. He alleges that Milwaukee County is aware of Hearth Initiative's existence and named it as a participant in a county-branded outreach event. This is not enough to establish that Milwaukee County and Hearth Initiative "reached an understanding" to deny the plaintiff's due process rights by evicting him. If the facility is indeed unlicensed, that suggests that it is acting *without* the county's approval and so cannot be acting under color of law.

The complaint contains even fewer allegations about UMOS. The plaintiff alleges that "[r]epresentatives of UMOS were present" at the facility, which he asserts "legitimiz[ed]" the facility's operation. He does not allege that UMOS and Milwaukee County (or any other state actor) interacted with each other, let alone that they reached an understanding to violate the plaintiff's constitutional rights. The court will dismiss the plaintiff's §1983 claim against Hearth Initiative and UMOS because the complaint does not contain sufficient allegations to establish they acted under color of state law.

The plaintiff's §1983 claim against the John Doe probation officers also fails. Under §1983, "a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution." Aguilar v. Gaston-Camara, 861 F.3d 626, 630 (7th Cir. 2017) (citing Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009)). "[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." Pepper v. Village of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005) (quotation omitted). The

10

plaintiff names John Doe probation officers as defendants but alleges only that those officers referred *other* residents to the facility. The complaint does not contain any allegations that those officers participated in the deprivation of the *plaintiff's* rights. Without evidence of personal involvement, a defendant cannot be liable under §1983. Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 966 (7th Cir. 2019). The court will dismiss the §1983 claim against the John Doe probation officers.

Nor has the plaintiff stated a §1983 claim against Milwaukee County. To state a claim against a municipality, the plaintiff must allege facts showing that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). There are three types of actions that can support municipal liability under §1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Spiegel v. McClintic, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted). The complaint contains no allegations establishing that Milwaukee County engaged in any of these actions. The complaint does not assert that the county has an express policy or widespread practice that led to the plaintiff's due process rights being violated. The complaint does not assert that a person with final policymaking authority

11

caused the plaintiff's due process rights to be violated. The court must dismiss the plaintiff's §1983 claim against Milwaukee County.

3. *Section 1985 Claim*

Section 1985(3) creates a civil cause of action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and who take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. §1985(3); see also §1985(1) (creating a civil action for preventing an officer from performing his or her duties).

Under §1985(3), the plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to a person or property or a deprivation of a right or privilege granted to U.S. citizens." Green v. Benden, 281 F.3d 661, 665 (7th Cir. 2002). The plaintiff must allege "a predicate race-based or class-based equal-protection violation." Thorncreek Apts. III, LLC v. Mick, 886 F.3d 626, 633 (7th Cir. 2018) (citing Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008)). "[C]lass-based" animus can be based on "sex, religion, ethnicity, or political loyalty." Id. (quoting Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988)).

The plaintiff alleges that the defendants conspired to retaliate against him for asserting protected housing rights and to suppress complaints of discrimination, motivated by racial and identity-based animus. Even assuming

12

that these allegations are sufficient to allege a predicate race-based equal protection violation, these allegations are too conclusory to support a §1985 claim. "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's [pleading] burden." Evers v. Reak, 21 F. App'x 447, 450 (7th Cir. 2001). The plaintiff must allege that (1) the defendants reached an agreement to deprive him of his constitutional rights, and (2) that they committed overt acts in furtherance that actually deprived him of those rights. Id. (citing Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1988)). "[A] complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." Id. The plaintiff must "allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights." Id. (quoting Brokaw v. Mercer County, 235 F.3d 1000, 1016 (7th Cir. 2000)). The complaint does not contain any factual allegations that any of the defendants reached an agreement to deprive the plaintiff of his civil rights. It does not identify any such agreement, or explain when, why or how it happened. It is not even clear which defendants the plaintiff alleges participated in the conspiracy. The court must dismiss the plaintiff's §1985 claim.

        4.    *Fair Housing Act Claim*

The plaintiff alleges that the defendants engaged in discriminatory conduct based on his race and "perceived identity" and retaliated against him. Section 3604(a) of Title 42 prohibits making housing "unavailable" based on the potential renter or buyer's race or color, 42 U.S.C. §3604(a), while §3617

13

prohibits coercion, intimidation, threats or interference with "any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3604] of this title," 42 U.S.C. §3617. Both §3604(a) and §3617 reach post-acquisition conduct, not just the initial sale or rental of housing, and require a showing of discriminatory intent. Bloch v. Frischholz, 587 F.3d 771, 782–84 (7th Cir. 2009) (*en banc*).

The complaint does not allege a Fair Housing Act claim under either provision because the plaintiff does not identify his race. He alleges that *other residents* who were Black were subjected to a "highly carceral environment" and that the defendants discriminated against the plaintiff because of race, but the plaintiff never actually says what *his* race is. Similarly, the plaintiff does not explain what his "perceived identity" is or how that "perceived identity" constitutes a protected class under the Fair Housing Act. Even if he properly had alleged this element, the plaintiff's complaint does not contain factual allegations showing discriminatory intent. See Iqbal, 556 U.S. at 686–87 (it is not enough for a plaintiff to allege discriminatory intent generally, and courts are not required to "credit a complaint's conclusory statements without reference to its factual context."). The complaint contains no factual allegations about what the defendants did that allegedly was discriminatory or whether individuals who do not share the plaintiff's race or "perceived identity" were treated more favorably. And again, the plaintiff refers to "defendants" generally;

14

it is not clear how Milwaukee County, UMOS or the John Doe probation officers could have discriminated against him because only the facility operator, Hearth Initiative, would have the power to evict him. The court will dismiss the plaintiff's Fair Housing Act claim.

      5.    *State Law Claims*

The plaintiff's remaining claims arise under Wisconsin state law. The court must determine whether it has jurisdiction to hear those claims. Federal courts have subject-matter jurisdiction in two primary types of cases: (1) cases alleging violations of federal laws or the federal Constitution ("federal question" jurisdiction under 28 U.S.C. §1331) and (2) cases between citizens of different states that involve an amount in controversy exceeding $75,000 ("diversity" jurisdiction under 28 U.S.C. §1332). When a plaintiff alleges violations of state statutory or common law in federal court, the federal court may hear and decide those state-law claims only if the plaintiff also has alleged claims over which the federal court has diversity or federal question jurisdiction and the state-law claims are "so related" to the diversity or federal question claims that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367.

Because the court has determined that the plaintiff has not stated any claims arising under federal law, the court has the authority to preside over the remaining state law claims only if the court has diversity jurisdiction. The complaint alleges that the plaintiff is a Wisconsin resident. As a municipality, Milwaukee County also is a resident of Wisconsin. The citizenship of some of

the other defendants is not clear, but when the plaintiff and even a single defendant are from the same state, the court lacks diversity jurisdiction over the case. The court must dismiss the plaintiff's remaining state law claims because it lacks jurisdiction over them.

### III. Leave to Amend

For all these reasons, the court must dismiss the plaintiff's complaint, but it will do so "without prejudice." That means that the plaintiff may, if he chooses to, file an amended complaint by the deadline the court will set below. If the plaintiff decides to file an amended complaint, there are things he should keep in mind. First, an amended complaint takes the place of, or "supersedes," the original complaint. Flanner v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). That means that the plaintiff must include in the amended complaint all the facts supporting his claims; he cannot simply tell the court to go back and look at what he alleged in his original complaint. With this order, the court is sending a blank amended complaint form. The plaintiff must use this form in preparing his amended complaint. He must put the case number for this case—Case No. 25-cv-923—in the space provided for the case number. The plaintiff should use the spaces on pages 3 and 4 to recite the facts of his claims; if that is not enough space, he may use up to three additional, double-spaced pages. Again, the amended complaint must be complete in itself. It may not refer the court back to allegations in the original complaint.

16

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who, specifically, violated his constitutional rights—which person or persons?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what *each* defendant allegedly did or did not do to violate his rights.

If the plaintiff elects to file an amended complaint, he must file it in time for the court to *receive* it by the deadline the court sets below. If the court does not receive an amended complaint by that deadline, the court will dismiss this case for failure to state a claim without further notice or hearing.

## IV.  Motion to Expedite Proceedings

On the same day that the court received the complaint, it received from the plaintiff a "motion to expedite proceedings." Dkt. No. 3. The plaintiff alleges that he is "presently unhoused as a direct and proximate result" of the alleged civil rights violations alleged in the complaint. Id. at ¶2. He asserts that he has attempted to contact defendant Milwaukee County about these issues, but that the county has not responded. Id. at ¶3. The plaintiff argues that further delay would cause him irreparable harm, "including health risks, financial instability, and compromised access to documentation essential for benefits, employment, and medical care." Id. at ¶4. He contends that expedited proceedings would serve the public interest because his allegations "center on

17

systemic failures affecting other residents in similarly vulnerable positions." Id. at ¶5. The plaintiff requests that the court "[s]et an early scheduling conference and/or hearing date" and "[p]rioritize preliminary discovery or injunctive briefing if appropriate." Id. at 1.

The court understands that the plaintiff wants this case to move forward as quickly as possible. But many other plaintiffs have filed suit in the federal courts, and many of them want their cases to move forward as quickly as possible. This court has a heavy case load and trial schedule, which sometimes prevent it from addressing motions as quickly as the parties may like. But the court now has screened the plaintiff's complaint and determined that it does not state a claim for relief. At this stage, there are no colorable claims before the court. There is nothing to define the scope of discovery and no more motions upon which the court needs to rule. There is nothing for the court to "expedite." The court will deny as moot the plaintiff's motion.

If the plaintiff chooses to file an amended complaint, there are several procedural steps the case must go through before the court can set a scheduling conference or allow the parties to begin conducting discovery. The court must screen the amended complaint, just as it has the plaintiff's original complaint. If the court concludes that the amended complaint states a claim, the court will direct the U.S. Marshals Service to serve any defendants. The defendants then may either answer the complaint or file a motion arguing the complaint should be dismissed. Once any motions challenging the complaint are resolved and *all* defendants have appeared and answered the complaint,

18

the court will set a scheduling conference to discuss a discovery plan and a pre-trial schedule for the case. The court advises the plaintiff that he must not seek discovery from the defendants unless and until he has timely filed an amended complaint, the court has screened that complaint and the court has issued a scheduling order.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

The court **DENIES AS MOOT** the plaintiff's motion to expedite the proceedings. Dkt. No. 3.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file an amended complaint in time for the court to *receive* it by the end of the day on **November 24, 2025**. If the court does not receive an amended complaint, or a motion asking for additional time to file one, by the end of the day on November 24, 2025, the court will dismiss this case with prejudice for failure to state a claim upon which relief can be granted.

The court **ORDERS** that if the plaintiff timely files an amended complaint, the defendants must not answer or otherwise respond unless ordered to do so by the court.

The court **ORDERS** that the parties may not serve discovery requests or attempt to obtain discovery from each other unless and until the court issues a scheduling order.

Dated in Milwaukee, Wisconsin this 22nd day of October, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**